## STATE v. BESARES.

No. 4927. Decided December 17, 1929. (283 P. 738.)

*Woolley & Holther*, of Ogden, for appellant.

*George P. Parker*, Atty. Gen., and *Lawrence A. Miner*, Asst. Atty. Gen., for the State.

CHERRY, C. J.

Defendant was tried by a jury upon a charge of murder in the first degree. She was convicted of voluntary manslaughter, and sentenced to imprisonment in the state prison. She appeals from the conviction and judgment, contending that the trial court erroneously refused to instruct the jury correctly concerning the circumstances under which the homicide in question would be justifiable.

That the accused killed Jack Farish in a disreputable house in Ogden City on April 9, 1929, by stabbing him with a knife, was not denied. The defense was that the homicide was justifiable. The place of the tragedy was a "bootleg joint" of low order conducted by Thelma Bruerton, a married daughter of the accused, whose husband at the time was in jail. On the night in question several persons, both men and women, were at the house, engaged in drinking and dancing. Among them was Jack Farish. When the night was far spent, Farish and Thelma were about to leave the house together. The accused, the mother of Thelma, objected, and an altercation ensued, during which the accused killed Farish by stabbing him with a butcher knife.

The accused testified in substance that during the evening Farish had been paying amorous attentions to Thelma, and following her from one room to another, and that finally they went into the kitchen together; that when everything was quiet in the kitchen the accused walked in and discovered Farish and Thelma engaged in that unnatural act of sexual perversion called "cunnilingus"; that she interfered and ordered Farish out of the house; that Farish coaxed Thelma to go with him; that she called Farish a beast and a dirty home breaker, and again ordered him out of the house, whereupon Farish struck her in the eye, and

she struck back at him, and then broke and ran; that Farish and others chased her into another room, and that she was frightened and excited and did not remember of having a knife or of stabbing Farish; that she was worried because Thelma was drinking; that she knew Thelma's husband was in jail for bootlegging, and knew that they had served whisky at the place, but that she disapproved of it, and that she stayed there to protect Thelma from Farish.

In its instructions to the jury, the trial court charged in effect that the killing of a human being is justifiable when committeed by a person in a sudden heat of passion, caused by the attempt of the deceased to commit a rape upon or to defile the wife, daughter, sister, mother, or other female relative or dependent of the accused, or when the defilement has actually been committed, and by a separate instruction defined "defilement" as follows:

"The defilement of a female, as meant by these instructions, is accomplished when any male person, not the husband of such female, has had sexual intercourse with such female, and the attempt to defile a female has been accomplished when such male person has attempted to have sexual intercourse with such female. The fact of the defilement or attempted defilement may exist, where the female has given her consent to such sexual intercourse, as well as to when she has not given her consent."

Counsel for accused upon this subject requested the court to further charge the jury that:

"Likewise an act of sexual perversion, or an attempt to commit an act of sexual perversion, such as cunnilingus, is a defilement within the meaning of these instructions."

The request was refused. This is the basis for the principal error relied on by the appellant.

By Comp. Laws Utah 1917, § 8032, subd. 4, homicide is justifiable:

"When committed in a sudden heat of passion caused by the attempt of the deceased to commit a rape upon or to defile the wife, daughter, sister, mother, or female relative or dependent of the accused, or when the defilement has actually been committed."

The contention of appellant is that the court erred in limiting the definition of defilement to an act of sexual intercourse, and refusing to instruct the jury that an act of sexual perversion, such as was testified to by the accused, amounted to a defilement within the meaning of the statute. The contention must be sustained. The question turns upon the meaning of the word "defile." It is defined by standard lexicographers as meaning "to corrupt the chastity of; to debauch; violate." Webster's New Int. Dict.; New Standard Dict.; Century Dict. It has also been judicially defined to the same effect. *State* v. *Fernald*, 88 Iowa 553, 55 N. W. 534. That the revolting and unnatural act which the accused testified she witnessed amounted to a defilement, within the language and purpose of the statute, we entertain no doubt. The Attorney General, in his brief for the state, concedes it, but in defense of the judgment contends that the evidence of the unnatural act was insufficient to submit that question to the jury. The proof of the unnatural act consisted mainly of the testimony of the accused. Of course, the jury was not bound to believe her; but her testimony was sufficient, if true, to establish the fact claimed. Its disgusting details need not be repeated here. It is sufficient to say that it was her principal defense to the charge, and that she was entitled to have the jury consider her testimony under proper instructions. This, we think, was denied her. If the facts were as testified by her, there was warrant for the jury finding that the homicide was committed in a sudden heat of passion, caused by the attempt of the deceased to defile, or the defilement of, her daughter, and therefore justifiable. She was entitled to have the jury instructed to that effect.

For the reasons state the judgment is reversed, and a new trial granted.

STRAUP, ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.